1
2
3
4
5
6

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10
11
12

VLADIMIR ARUTYUNOV,

            Plaintiff,

    v.

MICHAEL MUKASEY, et al.,

            Defendants.

Case No. C07-593MJP

ORDER GRANTING
PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND
COSTS

13        This matter comes before the Court on Plaintiff's motion for attorneys' fees and costs

14   pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). (Dkt. No. 11.)

15   After reviewing the motion, Defendants' response (Dkt. No. 12), Plaintiff's reply (Dkt. No. 13),

16   and all papers submitted in support thereof, the Court GRANTS Plaintiff's motion.

17                          **Background**

18        Plaintiff Vladimir Arutyunov was born in Azerbaijan and has been a Legal Permanent

19   Resident since March 3, 2000. On December 2, 2004, Mr. Arutyunov filed an application for

20   naturalization. (Dkt. No. 5-2, Ex. B.) On May 10, 2005, the United States Citizen and

21   Immigration Services (USCIS) interviewed Mr. Arutyunov and Mr. Arutyunov passed the English

22   language, U.S. history and government tests. (Id., Ex. C.) As of March 2, 2007, when he filed his

23   complaint, USCIS had not issued a decision on his naturalization application.

24        Mr. Arutyunov's claims were presented with fourteen other plaintiffs in an amended

25   Complaint for Naturalization, Declaratory Relief and Mandamus filed by Hassan Shamdeen, Case

26   No. C07-164MJP, pursuant to 8 U.S.C. § 1447(b). The Amended Complaint requested the

27

ORDER — 1

following relief:

> Plaintiffs request that the Court grant their naturalization applications, give them their oaths of citizenship and order Defendant CIS to prepare and provide certificates of naturalization. In the alternative, Plaintiffs request that the Court remand the cases to CIS with instructions that the applications be adjudicated within 30 days of the order.

(Dkt. No. 1 at 3.) In a later section of the complaint entitled "Request for Relief," Plaintiffs ask the Court to, among other things:

> Grant the applications of plaintiffs, and give the plaintiffs their oath of citizenship, or, in the alternative, order Defendant CIS to administer oaths of citizenship to plaintiffs within 10 days of the order.

(Dkt. No. 1 at 15.) On Defendants' motion, the Court severed plaintiffs' claims and created fifteen discrete cases.

Mr. Arutyunov was assigned Case No. C07-593MJP. On April 25, 2007, the Court ordered Defendants to show cause why the Court should not grant Mr. Arutyunov's application for naturalization. (Dkt. No. 2.) Defendants responded to the order with a motion to remand. (Dkt. No. 4.) In that motion, the Government argued that the Court should remand the matter to USCIS for adjudication of the application within thirty days because the FBI recently completed its "name check" of Mr. Arutyunov. On July 24, the Court issued an order in which it concluded that it has jurisdiction over this matter, and over Plaintiff's objection, granted the Government's motion to remand with instructions to adjudicate Mr. Arutyunov's application within thirty days. (Dkt. No. 8.) On August 2, USCIS issued the oath and certificate of citizenship to Mr. Arutyunov. (See Dkt. No. 10.)

Plaintiff now brings this motion for attorneys' fees and costs pursuant to the EAJA.

**Analysis**

Under the EAJA, a litigant who has brought a civil suit against the United States is entitled to attorney's fees and costs if: (1) he is the prevailing party in the matter; (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable. 28 U.S.C. § 2412(d)(1)(A).

ORDER — 2

1    Additionally, the application for fees must be filed within 30 days of a final judgment.  Defendants

2    do not challenge Plaintiff's motion as untimely.

3    **I.     Prevailing Party**

4            Two factors define "prevailing party" under the EAJA. <u>Carbonell v. INS</u>, 429 F.3d 894,

5    898 (9th Cir. 2005).  Plaintiff's action must have resulted in a "material alteration" in the parties'

6    legal relationship and that alteration must have been "judicially sanctioned."  <u>Id.</u>  A "material

7    alteration" means "the defendants were required to do something directly benefitting the plaintiff

8    that they otherwise would not have had to do." <u>Id.</u> at 900.  "A party need not succeed on every

9    claim in order to prevail.  Rather, a plaintiff prevails if he has succeeded on any significant issue in

10   litigation which achieved some of the benefit [he] sought in bringing suit." <u>Id.</u> at 901 n.5 (internal

11   citations and quotation marks omitted).  Mr. Arutyunov sought the following relief in his

12   complaint: (1) that the Court grant his naturalization application; or (2) that the Court order

13   USCIS to adjudicate his application and administer an oath of citizenship.  The Court did not

14   award either of those forms of relief.  But alternatively, Mr. Arutyunov requested that the Court

15   "remand the case[] to [US]CIS with instructions that the applications be adjudicated within 30

16   days of the Order." (Am. Compl. at 3.)  The Court did remand with instructions to adjudicate

17   within thirty days and Mr. Arutyunov was quickly naturalized.  Mr. Arutyunov thus achieved a

18   material alteration in his legal relationship with Defendants when his application was finally

19   adjudicated.[1] <u>See</u> <u>Al-Ghanem v. Gonzales</u>, 2:06-CV-320TS, 2007 U.S. Dist. LEXIS 8900, at *6-

20   7 (D. Utah Feb. 7, 2007).

21

22           [1]      The Government suggests that Mr. Arutyunov is not a prevailing party because he

23   opposed the Government's efforts to remand this matter back to USCIS.  But the Court's decision
     to remand over Plaintiff's objection does not strip his of prevailing party status. <u>See</u> <u>Al-Ghanem v.</u>

24   <u>Gonzales</u>, 2:06-CV-320TS, 2007 U.S. Dist. LEXIS 8900, at *6-7 (D. Utah Feb. 7, 2007) ("The
     Court looks to the substance of the litigation to determine whether an applicant has substantially

25   prevailed in its position, and not merely the technical disposition of the case or motion.") (quoting

26   <u>Kopunec v. Nelson</u>, 801 F.2d 1226, 1229 (10th Cir. 1986).  Mr. Arutyunov is still a prevailing party,
     even though the Government adopted his litigation position during the litigation.

27

ORDER — 3

1      The material alteration in the relationship between the parties must also be stamped with

2   some "judicial imprimatur." Carbonell, 429 F.3d at 901.  Relief achieved through a voluntary

3   change that was simply prompted by the lawsuit does not convey prevailing party status on the

4   plaintiff.  See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S.

5   598, 605 (U.S. 2001) (rejecting the "catalyst theory" on the ground that it lacks the critical factor

6   of "judicial sanction").  Here, USCIS did not voluntarily adjudicate Mr. Arutyunov's application,

7   but was compelled to do so by the Court.  When Mr. Arutyunov brought this action under §

8   1447(b), the Court assumed exclusive jurisdiction and had two options for disposition of the

9   matter: (1) to determine the matter on the merits; or (2) to remand the matter, with appropriate

10  instructions, to USCIS to determine the matter. 8 U.S.C. § 1447(b); United States v. Hovsepian,

11  359 F.3d 1144, 1161 (9th Cir. 2004).  On July 24, 2007, the Court remanded Mr. Arutyunov's

12  case to USCIS with explicit instructions to adjudicate the application and reserved the right to re-

13  establish jurisdiction if Defendants failed to comply with its order. (Dkt. No. 9.) Compare Chebli

14  v. Chertoff, 07-CV-10750, 2008 U.S. Dist. LEXIS 7839 (E.D. Mich. Feb 4, 2008) (denying

15  EAJA fees in § 1447(b) case where parties privately settled matter before Court held

16  naturalization hearing).  USCIS acted on Mr. Arutyunov's application at the direction of the

17  Court and would have violated a court order if it had not done so.

18      Mr. Arutyunov's success on the merits does not rely solely on the fact that USCIS

19  ultimately granted his application for naturalization; instead, his success stems from the fact that

20  USCIS adjudicated his naturalization application at all.  Section 1447(b) is "a statutory check on

21  what could otherwise amount to an infinite amount of time available to the government in which

22  to render a decision on the application." Alghamdi v. Ridge, No. 3:05cv344-RS, 2006 U.S. Dist.

23  LEXIS 68498, *16 (N.D. Fla. Sep. 25, 2006).  The Ninth Circuit has found that "[a] central

24  purpose of [§ 1447(b)] was to reduce the waiting time for naturalization applicants." Hovsepian,

25  359 F.3d at 1163 (citing H.R. Rep. No. 101-187, at 8 (1989); 135 Cong. Rec. H4539-02, H4542

26  (1989) (statement of Rep. Morrison)).  At the time he filed his complaint, Mr. Arutyunov had

27

ORDER — 4

1   been waiting for almost two years for the Government to issue a decision on his naturalization

2   application.  Mr. Arutyunov's action put an end to the delay in processing his application and

3   forced USCIS to make a determination on his immigration status.  USCIS's discretion in deciding

4   whether to grant or deny Mr. Arutyunov's application does not transform the adjudication of that

5   application into a voluntary act. See Alghamdi, 2006 U.S. Dist. LEXIS 68498, at *17 ("Whether

6   USCIS ultimately grants or denies the application are [sic] irrelevant for determining whether a

7   plaintiff has succeeded on the merits of an action based on § 1447(b).  The sole purpose of §

8   1447(b) is to provide the applicant with a decision on the application where a decision has been

9   withheld for an unreasonable amount of time.").   Mr. Arutyunov is the prevailing party in this

10  action. See id. at *39 (finding plaintiff prevailing party where court determined that application

11  had been wrongfully delayed, scheduled hearing, issued remand order while retaining jurisdiction,

12  and where agency then naturalized plaintiff).

13  **II. Substantially Justified**

14          A litigant may not recover fees under the EAJA if the government shows that its litigating

15  position and "the action or failure to act by the agency upon which the civil action is based" were

16  substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d);

17  see also United States v. Real Prop. at 2659 Roundhill Drive, 283 F.3d 1146, 1151 n.7 (9th Cir.

18  2002) ("The EAJA defines the 'position of the United States' as not only its litigation position in

19  the civil action, but also the government's action upon which the civil suit is based.").  "Congress

20  enacted the EAJA to ensure that individuals and organizations would not be deterred by the

21  expense of unjustified governmental opposition from vindicating their fundamental rights in civil

22  actions and in administrative proceedings." Abela v. Gustafson, 888 F.2d 1258, 1262 (9th Cir.

23  1989) (emphasis added). "[W]hen analyzing whether the Government was substantially justified in

24  a particular case, courts should consider the Government's litigating position as a whole."

25  Comm'r v. Jean, 496 U.S. 154, 161-62 (1990).  The Government bears the burden of showing

26  that its position was substantially justified. Real Prop., 283 F.3d at 1151 n.7.

27

ORDER — 5

1         The government's litigation position rested on a single argument – that remand was

2    appropriate because USCIS is better equipped to adjudicate a naturalization petition.  To find that

3    the government's litigation position was substantially justified, the Court must determine that the

4    arguments had "a reasonable basis in law and fact." <u>Abela</u>, 888 F.2d at 1264.  Defendants'

5    argument that USCIS is better equipped to assess the merits of a naturalization application is

6    reasonable.

7         In its briefing, the Government does not even attempt to argue that its pre-litigation

8    conduct was substantially justified.  The Government's failure to timely act on Mr. Arutyunov's

9    underlying application was not reasonable.  Mr. Arutyunov brought this action because USCIS

10   had failed to adjudicate his naturalization petition even though he had completed his citizenship

11   interview two years earlier.  Although no statutory time limit governs the adjudication of

12   naturalization applications, agencies are required to conclude matters presented to them within a

13   "reasonable time." <u>See</u> 5 U.S.C. § 555(b).  Further, the applicable regulations state that "[a]

14   decision to grant or deny the application shall be made at the time of the initial examination or

15   within 120-days after the date of the initial examination of the applicant for naturalization[.]" 8

16   C.F.R. 335.3(a).  Two years is not a reasonable amount of time to wait for the agency to

17   adjudicate the application. <u>Compare Smirnov v. Chertoff</u>, No. 06-10563-RWZ, 2007 U.S. Dist.

18   LEXIS 9598 (D. Mass. Jan. 18, 2007) (two year delay unreasonable) <u>with</u> <u>Simonovskaya v.</u>

19   <u>Chertoff</u>, 06-11745-RWZ, 2007 U.S. Dist. LEXIS 5446, at *6 (D. Mass. Jan. 26, 2007) (one day

20   delay not unreasonable).

21        In other similar cases before this Court, the Government has argued that it could not

22   adjudicate the naturalization application until the FBI completed all background checks.  The

23   Northern District of Florida found that the explanation "that background checks were necessary

24   and had to be completed before the plaintiff could be naturalized... merely restates, in a

25   conclusory manner, the necessity of completing the background check; it does not <u>justify</u> the

26   delay." <u>Alghamdi</u>, 2006 U.S. Dist. LEXIS 68498 at *43 (emphasis in original).  The <u>Alghamdi</u>

27

ORDER — 6

1    court reasoned:

2        [W]hile a reasonable person would not dispute the necessity of conducting a
         background check on an applicant for naturalization, a reasonable person would
3        require a satisfactory justification for a substantial <u>delay</u> in completing the background
         check.  Indeed, government agencies are required to conclude matters presented to
4        them within a "reasonable time."  <u>See</u> 5 U.S.C. § 555(b).  Otherwise, an applicant for
         naturalization remains in perpetual limbo and is by de facto, denied his citizenship, a
5        right that has been afforded by Congress to deserving individuals since the rise of the
         American democracy.  This is particularly true when Congress has enacted legislation
6        permitting the applicant to apply to federal district court if a decision is not rendered
         on the application with 120 days of the completion of the examination under 8 U.S.C.
7        § 1447(b).

8    <u>Alghamdi</u>, 2006 U.S. Dist. LEXIS 68498 at *42-43 (emphasis in original).  The Government has

9    suggested in the other cases severed from this one that the underlying delay in processing the

10   applications is justified because the FBI does not have sufficient resources to complete the

11   millions of name check requests it has received since the events of 9/11 and in the interest of

12   national security, USCIS's only recourse was to wait for the results of the name checks before

13   adjudicating the applications.  Insufficient resources to do the job that Congress has charged the

14   agency with doing does not substantially justify the delay.  See <u>Berishev v. Chertoff</u>, 486 F. Supp.

15   2d 202, 207 (D. Mass. 2007) (noting that the Government's burden to show substantial

16   justification "cannot be borne by a general appeal to delays attributable to the FBI background

17   check process" because otherwise, "the 120-day statutory window framed by 8 U.S.C. § 1447(b)

18   would be of no effect"); <u>Shalan v. Chertoff</u>, No. 05-10980-RWZ, 2006 U.S. Dist. LEXIS 82795,

19   at *6-7 (D. Mass. Nov. 14, 2006); <u>but see</u> <u>Deng v. Chertoff</u>, No. C 06-7697 SI, 2007 WL

20   2600732, *1 (N.D. Cal. Sept. 10, 2007) (finding delay justified because of volume of security

21   checks conducted by agency).  The Court does not find that USCIS's delay in processing Mr.

22   Arutyunov's naturalization application was substantially justified.  And the Court does not find

23   that any special circumstances make the awarding of fees unjust.

24   **III.  Reasonable Fees and Costs**

25       Plaintiff is entitled to a "reasonable" amount of fees.  28 U.S.C. § 2412(b).  The EAJA

26   includes a statutory cap for attorneys' fees, unless a special factor justifies a higher rate.  28

27

ORDER — 7

1   U.S.C. § 2412(d)(2)(A). Because Mr. Arutyunov's primary attorney needed specialized

2   immigration law skills to file the original complaint of fifteen plaintiffs, her efforts in originating

3   the action justify a higher market rate. See Pirus v. Bowen, 869 F.2d 536, 540-42 (9th Cir. 1989).

4   However, Defendants greatly multiplied the work on these cases by moving to sever the action

5   into fifteen distinct cases. Because much of the work required in this matter was duplicated for

6   the multiple plaintiffs, the Court finds it reasonable to award the statutory rate of fees to any

7   hours spent modifying work product for related cases. Hours billed by other members of

8   Plaintiff's legal team are to be compensated at the statutory rate. Further, Plaintiff is entitled to

9   reasonable costs. Because the Court acknowledges Plaintiff's primary attorney's immigration law

10  expertise, the Court disallows any consultation fee by an outside immigration expert.

11                                              **Conclusion**

12          The Court GRANTS the motion for attorneys' fees. Plaintiff is entitled to attorneys' fees

13  at the market rate for time spent on any original work in preparing this action, and attorneys' fees

14  at the statutory rate for time spent modifying original work for this action once the fifteen

15  plaintiffs in the original complaint were severed into discrete cases. Plaintiff is also awarded

16  reasonable costs. The parties are directed to submit a joint proposed order regarding costs and

17  fees that accords with the Court's instructions and contains documentation of costs and time

18  billed. The proposed order shall be submitted to the Court within twenty (20) days of this order.

19          The Clerk is directed to send a copy of this order to all counsel of record.

20          Dated: February 25, 2008.

21

22                                          Marsha J. Pechman
                                            United States District Judge
23

24

25

26

27

ORDER — 8